## Case No. 5,635.

GOULD et al. v. BALLARD et al.

[3 Ban. & A. 324; 13 O. G. 1081; Merw. Pat. Inv. 166.][1]

Circuit Court, D. New Jersey.    June 18, 1878.

PATENT—REISSUE—ENLARGEMENT—NOVELTY.

1. While enlargement by the use of new instrumentalities is forbidden in a reissue, restriction by the disuse of some of the old is allowable. Carver v. Braintree Manuf'g Co. [Case No. 2,485]; Gallahue v. Butterfield [Id. 5,198]; and Dorsey Harvester-Revolving Rake Co. v. Marsh [Id. 4,014],—cited.

2. The reissued patent No. 7,149, dated May 30th, 1876, for improvement in corner-clamps or protectors for trunks, granted to complainants, the original letters patent having been granted to Edward A. G. Roulstone, held invalid for want of novelty.

[In equity. Bill by William B. Gould and others against George M. Ballard and others.]

A. V. Briesen, for complainants.
E. L. Sherman, for defendants.

NIXON, District Judge. This suit is brought against the defendants for infringing reissued letters patent No. 7,149, dated May 30th, 1876, for "improvement in corner-clamps or protectors for trunks." The original patent [No. 59,458] was granted November 6th, 1866, to one Edward A. G. Roulstone, the assignor of the complainants, for "improvement in trunk molding." The defences set up in the answer are: 1. That the reissued letters patent are void, because they include more than was specified in the original, and are inventions and things substantially different. 2. That the invention claimed in the reissue was described in several letters patent anterior to complainants' patent, and was known, and in public use by certain persons therein specified, and hence is void for want of novelty. 3. That

they have not infringed, but are making and selling the corner-clamps for trunks, which the complainants allege are an infringement, under and according to letters patent[3] granted to Edward A. G. Roulstone, October 30th, 1866, and reissued May 23d, 1876,[4] and assigned to the defendants, March 23, 1876.

1. Is the reissue void for including matter not disclosed in the original patent? To determine this question it will be necessary to compare the original with the reissue. Prima facie, the latter is for the same invention, and the burden of showing the contrary falls upon the defendants. The only claim in the original reads as follows: "I claim as a new article of manufacture, the corner molding or guard, a, for trunks, made of corrugated metal, formed into shape for application, and strengthened by a wire, b, substantially as described." The defendants insist that, in view of the state of the art when the patent was issued, such a claim is susceptible of only one construction, to wit, a corner molding or guard strengthened by a wire, and that there is nothing else therein which was not fully disclosed and patented by the same inventor, Roulstone, in letters patent No. 27,476, and granted to him as early as March 13, 1860. But it is not always safe or proper in construing a patent to confine attention to the claims. These are sometimes too narrow to embrace the whole invention disclosed in the description and specifications.

In the present case the complainants say that the original patent has two features; one relating to the manner of protecting trunk-corners, and the other of the construction of a trunk molding, and that this view is fully sustained by the specifications. Turning to the specifications, we find it declared that: "The invention relates to the manner of protecting or re-enforcing the corners of leather and wooden travelling trunks by metal caps or moldings, or the construction of such moldings as articles of manufacture, and consists in a metal molding made into form to cover or project over the three surfaces, meeting at each corner or angle of the trunk, when this molding, so struck up or formed into shape, is made of corrugated metal re-enforced in the horizontal angle by a metal wire." Having thus stated of what his invention consisted, he proceeds to state the good results which would follow its introduction: "Such moldings or corner-pieces applied to the four upper corners of a trunk enable the corners to stand, without damage, the very rough usage to which they are subjected by express and baggage men. Any blow received upon the molding is imparted not directly to the trunk, but to the protecting corrugation or corrugations of the metal upon which the blow may happen to fall, thereby preserving the body of the trunk from injury. . . The article thus made into shape, ready for appli-

━━━━━

[2] [From 17 O. G. 675.]
[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. Merw. Pat. Inv. 166, contains only a partial report.]

[3] [No. 59,272.]    [4] [No. 7,130.]

cation to trunk-corners without any subsequent shaping or bending, and so as to protect the three surfaces meeting at either angle of the trunk, and presenting, by means of a corrugated surface, obstacles at all points to the direct impact of any body against the surface of the trunk, is of great utility, presenting to manufacturers of travelling trunks a cheap and reliable means of improving and strengthening their productions."

The reissue is dated May 30th, 1876; whether it is for the same invention depends upon the solution of the question whether leaving out certain features described in the original has so changed its character as to render the reissue substantially different. The claims of the latter are: "The corner-clamp A, made with the outwardly-projecting beads, b, at the corner, said beads being convex at the outer and concave at the inner side, substantially as herein shown and described. 2. The corner-clamp corrugated substantially as herein described, as a new article of manufacture." There is nothing more here than the original contained, but less. In the reissue the inventor has made no mention of the strengthening-wire nor of the three-winged clamp, which were so fully described in the original. They were omitted by design. The three-winged clamp, because it was found to be anticipated by the patent to H. T. Lee, No. 42,670, and granted May 10th, 1864; and the wire, because it was ascertained to be of no value in protecting the trunk. Not much was left except the guard or clamp, made hollow around the trunk-corners for the purpose of protection, so that, in the words of the original patent, "any blow received upon the molding would be imparted not directly to the trunk, but to the corrugation or corrugations of the metal upon which the blow might happen to fall, thereby preserving the body of the trunk from injury." Are the strengthening-wire and the three-cornered clamp such important particulars of the original patent, that their omission so changes the scope of the invention as to render the reissue void?

In the recent case of Russell v. Dodge [93 U. S. 460], the supreme court exhibited a disposition to criticise the facility with which reissues were obtained at the patent office, and held that, where the original patent was for a process of treating bark-tanned lamb or sheep skin by means of a compound in which heated fat liquor was an essential ingredient, and in a reissue a change was made in the original specification by eliminating the necessity of using the fat liquor in a heated condition, and making in the new specification its use in that condition a mere matter of convenience, and by inserting an independent claim for the use of fat liquor in the treatment of leather generally, the character and scope of the invention as originally claimed were so enlarged as to constitute a different invention.

I was inclined to the opinion at the first blush that the case under consideration came within the principle of Russell v. Dodge [supra], but after a more careful examination I have come to a different conclusion. The difficulty there was that the changes introduced into the reissue extended and enlarged the operation of the original patent, "bringing under it," as was stated in the opinion of the court, "manufacturers not originally contemplated by the patentee." But here the omission tends to restrict rather than to enlarge; and while enlargement by the use of new instrumentalities is forbidden, restriction by the disuse of some of the old is allowable.

This question was early before the late Mr. Justice Story,—Carver v. Braintree Manuf'g Co. [Case No. 2,485],—who held that an inventor was always at liberty in a reissue to omit a part of his original invention, if he deemed it expedient, and to retain that part only which he deemed it fit to retain. To the same effect was the opinion of the late Judge Woodruff of the Second circuit, in the case of Gallahue v. Butterfield [Id. 5,198]. The patentee in his original patent had a weight co-operating with a spring to give greater efficiency to the spring, and in the reissue he claimed the action of the spring alone. In commenting on this change, the learned judge said: "Nor do I perceive any sound objection to allowing the inventor, in his reissue, to claim the action of the spring alone. It is shown in the record of his patent; and surely a patentee, whose devices are new, is at liberty to claim each, by way of reissue, although he may have represented and claimed them originally as acting conjointly." In determining the case of Dorsey Harvester Rake Co. v. Marsh [Id. 4,014], Judge McKennan of this circuit held that any feature of the invention, which was actually a part of it, that was only suggested or indicated in the specifications or drawings, might be distinctly described in an amended specification and protected by a reissued patent, and, hence, that the claims of a patent might be restricted or enlarged to cover the real invention. "Nor is it any objection to a renewed patent," he adds, "that part of the original invention is omitted. This an inventor may do, because the public may use it, and there is nothing in the policy or terms of the patent act which forbids it."

2. Holding the reissue to be good, notwithstanding these omissions, the inquiry recurs: What is the invention described and sought to be covered by it, and is the same void for want of novelty?

It is a corner-clamp, made with an outwardly-projecting bead at the corner, the bead being convex at the outer and concave at the inner side. The inventor called it a corner molding or guard in his original description. In the Lee patent it is denominated a metal corner and cap or protecting-

cap, but is solid, and not hollow. In the patent issued to Roulstone, March 13th, 1860, and numbered 27,476, the whole trunk, embracing sides, ends, tops, and bottom, as well as corners, is made of corrugated-metal plates or outwardly-projecting beads with an exterior convexity and an interior concavity. The object of the invention is the protection of the corners of a trunk, and it is done by the use of corrugated metal. When it is once demonstrated that the entire trunk may be improved and strengthened by covering it with corrugations, is there anything patentable or novel, or does it require invention, to apply to the covers of a wooden trunk substantially the same protection? The complainants' reissued patent does this and nothing more. The invention lost its distinguishing feature by the omission of the strengthening-wire. Every valuable thing left in it is so plainly suggested by the previous patent, to Roulstone, for trunks wholly covered with corrugated metallic plates, that a mechanic would naturally make the application of such corrugated metal to the corners of wooden trunks, without the exercise of more than ordinary skill. This view of the case renders it unnecessary to inquire whether the manufactures of the defendants are an infringement of the patent of the complainants. The bill must be dismissed with costs.